May it please the Court, I'm Kevin Kelbel with Ms. William Hobson and we represent the appellant Loretta Avent. She's appealing from the dismissal on summary judgment of her 42 U.S.C. Section 1983 claim for retaliation for the exercise of her First Amendment rights. Loretta Avent was a security guard at Desert Vista High School and she spoke at a meeting on April 26, 2005 about the district's ineffective dealings with the Hill River Indian Community students. And she spoke passionately about the district's failure to meet their needs and the disparate treatment with respect to altercations between students where the Hill River Indian students were treated more harshly than other students. About two weeks after that, or three weeks after that, she was assigned to home and at the very next board meeting after that, the contract that had previously been extended to her for the following year was revoked. And it's our position that that's sufficient evidence to sustain her claim, at least for the purposes of summary judgment. She only had to prove three things, that she was speaking as a member of the public rather than as an employee, that she suffered an adverse employment action, and that the adverse employment action was precipitated by the speech. And I don't think there's any question about any three of those elements. She was the district's position and she was speaking as part of her job duties, but the record is pretty clear that that's not true. She was not invited to the meeting by the superintendent. In fact, the notes- Counsel, could you address Judge McNamee's order? As I read at the heart of his order, and I think the key issue for me on which this case appears to turn, is whether that conduct at the meeting was a substantial or motivating factor in the decision not to renew her contract. Judge McNamee concluded that the substantial or motivating factor was her behavior after that meeting and obtaining restraining orders against virtually every member of the school administration that she had to interact with at work. Can you address that for me, please? Yes, Your Honor. She obtained an order of protection against Principal McDonald because at the meeting he threatened her, and on May 11th he threatened her again because he was upset that the Attorney General or some other state agency might be investigating him for his failure with respect to the discrimination matters. She had already gone to Assistant Superintendent Adolph to address her fear with respect to Mr. McDonald, and Steve Adolph did nothing. Her counsel had already written a letter to the school board on May 2nd addressing her fear of retaliation, and they did nothing. She felt there was no other resort but to go to the Justice Court and get an order of protection, which she did. Counsel, I take it she did that on her own, not through- it wasn't her lawyer who was representing her in connection with the labor matter that she did that? That's correct, Your Honor. And subsequently, you know, rather than go to the alleged harasser, Mr. McDonald, and say, here's what we need to do, Mr. McDonald, to comply with this protective order, Janet Segrin, the human resources person, approached Loretta Avant and said, we need to talk about how we're going to negotiate the terms of this order so that we can have you continue to work here. And that's, you know, for lack of a better legal term- Counsel, how is that harassment that's tied back to the statements on April the 26th, what's wrong with the HR person saying, look, you've just got a restraining order against the principal, now you're a security guard at the school, we need to talk about how the two of you can continue to work at the same work site without causing a violation of this restraining order? Because Loretta Avant had been told by the court, and it was on the face of the order of protection, and she'd been told again by the school resource officer, police officer on campus, you can't negotiate the terms of this protective order without going back to the court. She understood that what she'd been asked to do was modify a protective order, and she'd been told not to do that. She thought she was being asked to violate a court order by renegotiating the terms of the protective order. What do school receptionists do that constitutes a violation of our constitutional rights that warranted a protection order against the school receptionist? Well, I don't think their orders of protection necessarily claim that her constitutional rights were violated. It's just that they were all making a concerted effort to get Loretta to violate the court order. Well, what did the receptionist do? The district court basically said you have no evidence to show that any of these other people did anything to her, and yet she obtained restraining orders against each and every one of them, which made it impossible for anybody at the school to work with her. That's what got her not renewed. Well, that may have been part of why she got not renewed, but none of that happens if the original threats are not made to her because of what she said at the April 26th meeting. The process starts on May 10th when Joe McDonald calls the human resources director and says, I want to change her performance evaluation, and I think her being at the meeting and her speaking at the meeting were acts of insubordination. There's a direct line from that to her termination. Those events are you... Counsel, are you imputing to all of the other school personnel who were named in her protection orders the statements that the principal allegedly made after that April 26th meeting? No, Your Honor. They're all employees of the district. The charge is that they withdrew her offer of a contract because of what she said, and the way that was engineered was with Joe McDonald and Janet Segrin basically looking for a reason to terminate her, and they actually cite the fact that she obtained a protective order as an act of insubordination, but it's her absolute right to do that. Well, when her supervisor tried to speak with her, she threatened to have him arrested by the sheriff. What does that have to do with the statements that she made at the public meeting on April the 26th? Bob Cox was not her supervisor. Her supervisor throughout this was Rosin Hood. That never changed, at least as far as Rosin Hood and Loretta Avant knew. He was never her supervisor, and the eyewitness to that encounter. I thought the letter that was sent to her counsel changed her supervisor from the one that she wanted to be her supervisor. Well, the one that she knew to be her supervisor, the letter did that, but that was all part of the process. It's our contention that this whole thing about confronting her and chasing her down on campus and threatening her, that was all part of the retaliation for her speech. So your theory is sort of imputed liability from whatever the principal said after the April 26th meeting and all of the behavior by the school personnel that she obtained restraining orders against or threatened to have arrested. It's all part of the same pattern. There's a concerted plan from May 10th until May 17th to find a reason to get Loretta Avant out of the school district. And what evidence did you cite to the district court on summary judgment to establish your theory of imputed liability that flowed from the principal to all other members of the school administration, including people who were trying to supervise or work as a security guard? There's a direct line from Joe McDonnell calling Janet Segrin on May 10th and saying, here's my problem. She spoke at the meeting. That was insubordination. We don't like what you said at the meeting. And then Janet Segrin, based on that interaction, starts an investigation into Loretta Avant. And when Janet Segrin was pressed, well, what were your concerns? She says, well, I don't remember. I don't know what my concerns were. Steve Adolph can't tell you why Loretta Avant was filed. Roslyn Hood doesn't know why Loretta Avant was fired. The whole thing. I think that's not really quite right about the firing because it was simply a reason. The contract was rescinded. It wasn't dismissed or fired or technically. There was an offer of employment for the following year on the table, which was never delivered to her. That offer was made on the 11th. The district never delivered that to her. Then they went back on June 8th to the board and recommended that they rescind that contract. And the only thing that she had done, I understand the difficulty with characterizing the protective orders as an adverse action, but all that stems from the fact that she spoke at this meeting in defense of these Hill River Indian community students. None of those protective orders would have come out had Joe McDowell not threatened her at the meeting on the 26th and then later on May 11th. She got a protection order against Ms. Segrin as well, did she not? Correct. How did Ms. Segrin harass her in conformance with her theory of civil rights liability? It was her understanding that Janet Segrin was trying to get her to change the terms of the first court order against Joe McDowell. And it was her understanding, based on what the judge told her and what the police officer told her, that you can't negotiate these terms except by going back to the court. But I still don't understand what the link is between Ms. Segrin and your theory that everything that Ms. Segrin and Mr. Cox and the school receptionist did were in furtherance of what I guess you would term a conspiracy that flowed from her statements on April the 26th. The incidences with Janet Segrin do not occur absent the protective order with Joe McDowell. If there's no protective order with respect to Joe McDowell, then none of those other interactions happen. And the only reason for your... So your argument is strictly sort of a temporal proximity, it all occurred in that order, therefore it must be as a result of what she said on April the 26th? It's a chain of events that starts with Joe McDowell calling Janet Segrin insane, which she did on April 26th with insubordination. And I want to change her employment. Counsel, beside that inference, what evidence do you have that all these other people were engaged in this conspiracy? I'm not sure I would go as far as to call it a conspiracy. But the testimony, I mean, you have their testimony that says they can't articulate a reason for her termination. And our position is the real reason is because of what she said, and their inability to articulate an alternative reason except for what they kind of sanitized when they presented it to the board on June 8th suggests to me that they're concealing the real reason, and that real reason was they didn't like what she said. Counsel, how can a school district have a security guard working for them that won't talk to anybody above the security guard or take any direction whatsoever on such mundane issues as where she parks her car in the morning and where she clocks in? She didn't follow those instructions either, did she? She did not on one occasion. But the issue isn't that when a victim gets a protective order against her harasser, the solution, the way to accommodate that is not to reassign the victim. The way to accommodate that is to investigate the harasser. No one ever questioned whether Joe McDonald actually was harassing her. They just assumed that that never happened, and then they went and basically retaliated against her for filing a protective order by reassigning her and putting further restrictions on her movement on campus. Counsel, the problem I'm having with the record, though, is that the school district offers as the reason for the non-renewal of the contract all of her behavior in obtaining all these protective orders and refusing to follow even the simplest instructions about clocking in at a different building so you don't run into the principal that you're having problems with. And that, to me, seems like a pretty legitimate business reason that is not pretextual for not renewing her contract. Do you have any evidence that would establish causation between April the 26th statements and the reason that the school district is now citing for not renewing her to create a tribal issue of fact for a jury? There's the report that Joe McDonald wrote to Janet Segrin that says her being at the meeting was in subordination, which she said at the meeting was in subordination. That's the cause of the investigation that leads to the protective order and leads to everything else. Without Joe McDonald's report, none of this happens. That's the – Do you want to save some time for rebuttal? I do, Your Honor. You have about a minute and a half. May it please the Court. I'm Gordon Lewis from Joan Skelton Hockley on behalf of the Tempe Union High School District. This appeal raises two primary issues. The first is whether Ms. Avant's speech was constitutionally protected, and the second is whether Ms. Avant's speech was a substantial or motivating factor in her non-renewal. Now, the second issue resolves this case because the sequence of events forms such a clear picture on the issue. Before we get into the events, let me ask you, how do you justify the district judge? A good district judge, he should know better, but he adopted pretty much the other side's statement of facts. Well, what occurred in that circumstance, Your Honor. I mean, the Federal rules trump the local custom or culture, whatever it is down there. Well, Your Honor, what occurred with respect to the statement of facts was in support of our motion for summary judgment, the district submitted the facts, you know, with – supported by admissible evidence. And there are two things occurred from Ms. Avant in this case. The statement of facts that she submitted, controverting the district's statement of facts, didn't conform with the – didn't conform with the rules. But more importantly, most of the facts or most of the responses to the district's statement of facts did not contain admissible evidence that could create a genuine issue. So what the district did in its reply is the plaintiff did not set out the facts in this case, went through and identified what the plaintiff's response was to each of the facts that we had presented, including whether it was uncontradicted, whether they presented admissible evidence to contradict the fact, or whether she was trying to contradict it by contradicting her own deposition testimony. And the district court judge considered all of the facts and their responses to the fact – to our facts in making its ruling. And there are – there are no disputes of material fact that would prevent summary judgment from being issued in this case. So, I mean, under the undisputed chain of events with respect to the issue of retaliatory motive, this is what happened. And again, this is undisputed. On April 26, 2005, Ms. Avant spoke before administrators and governing board members about Native American student issues. And then on May 11, 2005, after her speech, the administration recommended that her contract be renewed, and the governing board voted that her contract be renewed. But then after May 11, after the vote to renew her contract, Ms. Avant obtained an injunction against the principal that prevented him from speaking to her or being near her. She walked out on a meeting with the assistant superintendent that was called to see how they would comply with the injunction. She went and obtained additional injunctions against the assistant superintendent, against an assistant principal, against a staff receptionist. She was given a letter that told her to comply with the injunction, where she should park, where she should clock in. And when she finally returned to campus, she didn't park where she was told, she didn't clock in where she was told. She threatened the head security guard, told that person that, you know, she could only talk to her lawyer, couldn't talk to him. And then when her assistant principal came, she said that she would call the sheriff on him and have him arrested. So because of these actions, all that occurred after May 11, after the governing board's vote to renew her contract, that is what caused the governing board to rescind its offer. You know, there's not a jury that could logically infer, that could reasonably conclude that the speech on April 26 caused the non --" caused her to be non-renewed, because after a speech on April 26, the administration recommended and the governing board voted to renew her contract. Then she engaged in a series of insubordinate and unprofessional acts. And after that happens, the --" they realized that they had changed the contract. The reason there's not a disputed statement of issue of fact regarding her role at the speech is because she has admitted in her deposition testimony what her duties are. As you're aware, the issue of whether someone's speech is constitutionally protected is based on whether the employee is speaking in a way that is in the interest of the employee in connection with their official duties. And it's a practical inquiry. It looks beyond the job description to the duties the employee actually performs. Well, speaking at meetings about Native American student issues was a duty that Ms. Avant actually performed for the district. She admitted that she was assigned additional duties as a security guard. She admitted that one of her additional duties was to act as parent liaison and coordinate meetings so the superintendent could understand the problems that Native American students were having at Desert Vista. And she admits that on February 8, 2005, you know, as parent liaison, she went to a meeting with the superintendent and the administration members, and she spoke at that meeting about Native American student issues. Well, at that point, was she speaking as an employee of the district or as a citizen? No. She was speaking. She has admitted that she was speaking as parent liaison. The superintendent brought her to the meeting, introduced her as a parent liaison. She got up and actually in her papers states that she discussed tutoring issues that relate to Native American students, you know. So then, after speaking at that meeting, and there's no dispute in the record that as parent She coordinated these meetings, and she went to that meeting and spoke to the attendees about Native American issues. She appears at the April 26, 2005, meeting. She coordinates the April 26, 2005, meeting. And at the April 26, 2005, meeting, she does exactly the same thing. She spoke to the attendees about Native American student issues. So the action is the same, the conduct is the same. Why isn't that a jury question as to what her role was when she was speaking at the meeting? I mean, trying to fit this thing into the Garcetti formula. Well, what this issue is most similar to is this Court's recent decision in Huppert v. City of Pittsburgh, and specifically the first issue of speech in the Huppert case. That was where there was an admission in deposition testimony by the police officer that they were asked to investigate issues at the public works yard. And if the question of fact is on the scope of an employee's duties, but if there is deposition testimony, if it's undisputed in the record what the scope of an employee's duties was acting pursuant to their duties, then there's no issue of fact. And the legal significance of that is a question of law that can be decided. Here, there's no issue. In her deposition, she admitted that I was appointed parent liaison. I was appointed parent liaison by the superintendent. One of my duties as parent liaison was to coordinate meetings where the superintendent could learn about Native American student issues. I arranged the April 26, 2005, meeting. And when I appeared at the April 26, 2005, meeting, she was there speaking about Native American student issues just as she did on February 8, 2005. There's not – there's no room for serious debate about the scope of her duties. She's admitted to the scope of their duties. There's not a dispute regarding the scope of her duties. Now, the – you know, the fact that the press reported on the second meeting where she spoke about Native American issues doesn't change the analysis. You know, the form of an employee's speech can't control, you know, whether the speech involves their duties. You know, if an employee, you know, expresses an opinion about an aspect of the job, you know, the nature – the constitutional nature of that speech doesn't change if the employee is expressing that opinion in a memo to their supervisor or if they're expressing that opinion, you know, at a press conference with cameras rolling. The audience may be different, but the speech is the same. And, you know, Ms. Avant can't call herself a volunteer. She's admitted that addressing Native American student issues was an additional duty that she was assigned. And the fact that Ms. Avant was not expected to be at the April 26, 2005, meeting doesn't change the duties that she performed when she arrived. You know, once she arrived at the April 26, 2005, meeting, she did her job. Spoke to the meeting attendees about Native American student issues. I – it would be similar to – or their contention that because she wasn't invited means she wasn't doing her job. That would be similar to the district hiring a landscaper to mow the lawn at a football field, expecting that that person is going to mow the lawn every Thursday. And then when a football game is going on on Saturday, the person comes, fires up the lawnmower, and mows the lawn. They're not expected to be there. They may consider it improper for them to be there, but they're engaged in their duties when they're doing it. One wouldn't say that, oh, well, they're doing – they're mowing the lawn as a private citizen in that instance. Well, you know, here, the speech on April 26, 2005 is the same as the speech on February 8, 2005. She was speaking to an audience about Native American student issues. Well, it seems – So, Lewis, if we assume that there is – assume for purposes of my question that there is a material issue of fact over the scope of her duties and whether the statement that she made on the 26th was within the course and scope of her employment, can we still affirm the summary judgment on the alternative grounds cited by the district court that there's a failure of a prima facie case of proof of causation? Oh, absolutely. The – there is – you know, the circumstances that surround the issue of retaliatory motive are so clear that the district would prevail on that issue regardless of what this Court found with respect to the protected nature of her speech. Well, my only little problem here is that the process to retaliate against her – this is her argument – began right after the speech and culminated in the decision on June the 8th to rescind. Well, we have the – the critical intervening moment of May 11, 2005 when the administration recommended and the governing board voted to renew her contract. This is after her speech on April 26, 2005. So the governing board was aware of her speech on April 26, 2005. The administration was aware of her speech on April 26, 2005. Indeed, the evidence in the record is that while Joe McDonald called the assistant superintendent on May 10, 2005 and said, gee, I have an issue with the evaluation and I would like to change it, you know, the – even hearing that information, the assistant superintendent did not change the recommendation. The matter went to the board the next day with the administration's recommendation to renew the contract, and the board voted to renew. You know, the only way that you could find an issue in this case is by, you know, allowing the plaintiff, allowing Ms. Avant to resort to rampant speculation and supposition to support her claim. But, you know, I mean, a reasonable inference, an inference is only reasonable when it's drawn from the evidence without resort to speculation. You know, a reasonable inference can't be supported by threadbare, conclusory statements regarding people's motives. There's no inference of retaliation, no reasonable inference of retaliation that you can generate in this case when after her speech. Sotomayor, in fact, it's just the opposite. Yeah. It's just, yeah. I mean, after the — Yeah. You know, there's a – there's a – you know, the sequence of events is clear. She spoke. The governing board renewed her contract. She got a number of injunctions and told her, you know, the people who – the district wanted a supervisor that they couldn't talk to her. And then the governing board rescinded. You know, that is – you know, that is such a clear picture on the issue of retaliatory motive that summary judgment on that issue is justified regardless of what the – what the Court finds on the public – on whether her speech was constitutionally protected, whether she was speaking in her capacity. But even in that circumstance, even on that issue, the admissions of Ms. Avant about what her duties were, that she was assigned the duties of parent liaison, that she was – that she was assigned the task of coordinating meetings where the – where the superintendent could learn about Native American student issues, and that she actually spoke at the February 2005 site council meeting about Native American student issues. When she does the same thing on April 26th, that's pursuant to her – to her duties. It is not constitutionally protected speech. You know, because of her admissions, it is identical to the – to the Hubbard case. And under those circumstances, we believe the district should – that this Court should affirm the ruling of the district court. Unless you have any other questions, that's all I have. Thank you, Mr. Lewis. Your model. Mr. Colville, one thing here bothers me. How could the school district continue to employ her after she essentially cut off all communication with respect to adjusting to her work responsibilities? She didn't cut off all communication. She asked the district to communicate with her about revising the court order through her attorney because it was her understanding that in order to change the court order, they had to go back to court and do that. The district just refused to do it that way. They made a concerted effort to confront her and harass her. There's an eyewitness in his declarations in the record, Jim Goggins, who saw Bob Cox approach her, and he said it was a threatening situation and that Loretta looked truly alarmed. That's an independent corroboration of what she's claiming. This was engineered so they would have an excuse to do what McDonald wanted to do from the beginning, which was not to have her there anymore because she was making him look bad. And it happened at the April 26th meeting. Now, the question that Judge Goodwin asked about how do we know she was not working within the scope of her job duties on April 26th are easy. The district provided a bus to the district employees who could go to the meeting. She wasn't on the bus. She had to take personal unpaid leave to get off from school to go to the meeting. Well, didn't she schedule a meeting? No, sir. That is not true. She introduced Shirley Miles, the superintendent, to the lieutenant governor. Lieutenant governor. That's it. She made the introduction, and it's in the lieutenant governor's declaration. The lieutenant governor then called Shirley Miles to set up the meeting. The lieutenant governor got the room on the Indian Reservation. The lieutenant governor invited people. And when the meeting started and the students and Roz and Hood were not there, the lieutenant governor said, we're not starting until you go to the district. You go back and get the students and Roz and Hood here, then we'll start. And she controlled the meeting. Nobody from the district was allowed to speak because it was a listening meeting. Nobody from the district. Which means when she called on Loretta Vaughn, she was calling on Loretta Vaughn as a private citizen, just as everybody else who spoke at that meeting. She was not there as an employee of the district. She was not on their time. She was not doing their bidding. She was not speaking on their behalf. She had never spoke at a public meeting before. She had never been asked to organize a meeting before. That's plainly contradicted in the record. I believe I'm over time now. Thank you. Thank you. Thank you, both counsel, for your arguments. The Court will now stand at recess.
judges: Mills, Goodwin, Tallman